United States v. Presendieu and John Presendieu. May it please the court, I am Anne Hayes. I represent the appellant Stanley Presendieu. Mr. Presendieu's due process rights were violated because the district court accepted his guilty plea without an affirmative showing that he understood the nature of the charges against him. The record does not reflect that anyone ever advised Mr. Presendieu of the elements of the charges to which he pleaded guilty or that he had any understanding of the law in relation to the facts. The Supreme Court has stated unambiguously. Before the district court accepts a guilty plea, there must be an affirmative showing that the plea was intelligent and voluntary and the waiver of constitutional rights will not be presumed from a silent record. In fact, if a defendant's guilty plea is not equally voluntary and knowing, it's been obtained in violation of the due process rights and is therefore void. The guilty plea can't be an admission of all the elements of a formal criminal charge if the defendant does not have an understanding of the law in relation to the facts. Now, we've said in some cases that how much you have to tell a defendant sometimes depends on how complex the charges are. How do you think this case fits into that paradigm or that principle? I have a two-pronged answer to that, Judge Jordan. First is the defendant was told nothing about this case, so his intelligence level, his ability to comprehend and discern information doesn't even come into play because nobody told him anything about the elements of the offense. The other thing that I have to say is that the elements of the charged offense were not self-explanatory even if he had had the opportunity to hear information about what he was charged with, what the elements were. He was charged with bank fraud conspiracy, which that's not self-explanatory. The elements are that a conspiracy existed, the defendant knew of it, and he knowingly and voluntarily joined it. By simply being told the title of the offense, conspiracy to commit bank fraud, those elements are not self-evident. Even more so with respect to aggravated identity theft. That's a complicated set of elements that go on that. In fact, the Supreme Court has had to weigh in on what that statute requires. The Supreme Court has described the aggravated identity theft by saying the statute imposes a mandatory two-year prison sentence on individuals convicted of certain other crimes if, during and in relation to the commission of those crimes, the offender knowingly transfers past possessions. Can I slow you down just a minute? Yes, ma'am. We're on plain air on this. Is that correct? Yes, ma'am. Okay. Nobody said anything to the ... He had counsel there, right? He had counsel. And nobody objected or anything. Did the court ask counsel if he'd reviewed everything with the defendant? He asked him if he had reviewed the plea agreement with the defendant. He did not ask him if he had reviewed the indictment with the defendant or if he had reviewed the charges with the defendant. Did he not also say that they reviewed possible defenses? He did, Your Honor. And yet, that doesn't establish that the facts of the case were married up with the charges, with the elements of the charges. And I want to say that ... We can look at the proffer and we can see if the proffer contains material that supports each of the elements, and it seemed to me that it did. It was pretty explicit with respect to what he did with respect to U.O. and what he did in terms of carrying on the conspiracy. I agree, Your Honor, that the factual basis was adequate to support the guilty plea. However, that is a separate and independent requirement of Rule 11. Let me ask you this. Did the factual proffer also satisfy all the elements of the offense? I know your claim is he was not told the elements, but isn't it undisputed that the factual proffer, I'm looking at it, it's seven pages, does set forth facts that satisfy all elements of the offense? I believe that is the case, Your Honor. Nevertheless, unless the defendant understands how the facts relate to the law of the case, a plea cannot be considered voluntary. And that's what the Supreme Court said in Boykin v. Arizona. Are there any cases that say that in taking a guilty plea, you have to set out the elements of the offense? I mean, if there was a case that said that, that would be strong, but if the issue is from the record and on plain error from the record, does it appear that the material was put before him? I mean, is there a specific case that holds that that's a requirement? There are cases that say either the judge or someone else has to let the defendant know what the appropriate, what the elements are, what the law is. And I want to note that . . . From the Eleventh Circuit cases, you have a gweet or a gwitty that seems to sort of go the other way. And if you look at them, this one seemed a lot closer to gweet to me. Well, I would note that gweet is an unpublished disposition, whereas gatty is a published binding case. And so I think that distinction is quite important. And in gatty, the court said that the defendant receives real notice of the charge when he's been informed of both the nature of the charges and its elements. Gatty does say that the elements should be described, need to be described, either by the court or by counsel. And in this case, I want to point out the omissions from the record. In many cases, the plea agreement will serve the function of setting out the elements of the offense. Not so in this case. The plea agreement simply said that he was pleading guilty to conspiracy to commit bank fraud, the statutory codes. Typically during the Rule 11 colloquy, the defendant will ask if the defendant had an opportunity to read the indictment and discuss it with counsel. Not so in this case. In this case, there was some questioning about the discussions the defendant had with counsel, but none of it went back to the fundamental charging document or the elements of the offenses that were charged. It's unusual that that was never addressed. And then, of course, Rule 11 requires the judge to inform the defendant of the charges against him, the nature of the charges, and that didn't happen in this case. This is what the judge had to say about the charges that Mr. Prezendu was pleading guilty to. Count 1 charges you with conspiracy to commit bank fraud in violation of Title 18 United States Code Section 1349. Count 31 charges you with aggravated identity theft and it is in the statutory section. The record shows only that . . . What do you understand from the factual proffer that, as you just said, those facts constitute conspiracy to commit bank fraud? What are the facts that do that? I understand that your client knowingly took checks and cashed them, knowing they were either bad checks or somebody else's checks, he wasn't entitled to cash them. I mean, that's what happened. Your client physically took checks. I mean, that's what he admits in the . . . Yes, Your Honor. What does he admit he did that constitute the proof of the crime? I know you're talking about he didn't know the crime, he didn't know the elements. It's as Your Honor describes it. He took checks, he knew that they were not his and yet he cashed them. He not only knew they were not his, he knew they were bogus checks with falsified driver's license with false information on them. Yes, Your Honor. They were as bad checks as you can get and he knew that, right? Yes, Your Honor. And he took them to the bank, hundreds of them, not just one or two at one time. He disputed, actually during the Rule 11 proceeding, he disputed the hundreds. Well, how many does he admit? He didn't admit a specific number, Your Honor. But let's say he admitted more than 50. It was a good number of checks, Your Honor. Wait a minute. I just want to understand what your client did know because he was . . . What was his education? I know you don't want us to look at it, but he wasn't an illiterate person. He had a high school education. There was no question about his mental capacity. No one questioned his mental capacity. And so what does he admit? He took the checks and he knew they all had identity theft on them. They weren't who they were, right? Well, I disagree with that assertion. The record shows that he told, and I will say the factual proffer shows that he told the person who was cashing the checks that, you know, this one has a real driver's license, before I wasn't giving you real driver's licenses. He said that to the person who was buying the checks. Now, I would submit that that doesn't mean that he actually knew that these people were real. But there are other places in the proffer he admits that he knew this was a false identity. He knew that it wasn't him. But he does not admit anywhere. You're over your time. You've answered my question. Oh, I'm sorry. No, that's my fault. Thank you. Thank you. Mr. Bergendahl. May it please the Court, John Bergendahl appearing on behalf of the appellant, Scarley Jean. In our brief, we've raised four separate sentencing issues. There are two of the issues where our contention is that the district court misapplied the appropriate standard in number one, determining the loss amount that was attributable to Ms. Jean, and secondly, in denying her our request for a minor role. Those are the two issues that I would like to orally address before the Court this morning. With regard to the loss issue, Mr. Bergendahl, one of your arguments, not the only one, but one of them is that with regards to jointly undertaking criminal activity, the district court could not have and should not have included the check amounts for Ms. Farr. Is that correct? That's correct, Your Honor. And part of the argument as to her is that she came into the conspiracy after Ms. Jean was gone or had ended her involvement. Judge, Ms. Farr actually was in the conspiracy well prior to Ms. Jean coming in, and then again after an extended hiatus, reappeared at the very end of the investigation, and during the interactions that she had at that point in time with the undercover operative, who was the check casher, made it clear that she no longer had any association with the individual she had been involved with before, which was Mr. Persendu. And at that point in time, she was pursuing her own venture, which was to cash some checks that she, along with her girlfriend, with an accountant, had come into possession of. The first check along those lines was a bank check, a cashier's check, in the amount of $54,000. You're talking about Ms. Farr? I'm talking about Ms. Farr, yes. Let me simplify this. There was $84,000 of the Farr activity, that's right?  About $84,000? $83,000 to $84,000 of the Farr activity. You just want, as I understand all of your argument on the loss amount, you want that out and you want the loss amount to be around $109,000? That's absolutely correct. You don't contest the $109,000? We do not. Okay. And you really analogize this to the guidelines discussion of two independent mules who are carrying drugs and they're doing them at different times, even though they may be doing them in relation to some bigger boss, but they don't know about it or they don't deal with them separately. Is that the analogy? One of the examples that I cited from the guidelines had to do with an individual who was the girlfriend of a drug supplier, and on one occasion she agreed to go ahead and transport drugs for the individual. I cited that case to demonstrate that there is a significant difference between the conspiracy and jointly undertaken criminal activity, and it's the jointly undertaken criminal activity that really the court had to focus on and did not do so here. Since there wasn't an objection, we don't know all of the reasons, but the best hook I saw for the government was the reference by Ms. Jean about getting checks from tax. She had guys with tax people, something like that. Is there any connection of that to Farr? No, Your Honor, because by that point in time Farr was out of the picture and Farr makes clear, or the tape recordings make clear, that were played during the Durant-Solaire trial, which is part of this case, that Mr. Persendu had had a disagreement with Farr over who was going to get proceeds, and Farr disassociated herself from Mr. Persendu. When Ms. Jean came into the picture, there were a couple of individuals that she was getting the checks from, and the record supports this. One of them was Mr. Persendu, and the second one was Mr. Durant-Solaire. Are either of those tax people? Actually, both of them had their own independent tax consulting services that were capable of generating those, yes, Your Honor. The odd thing is that four days, five days after Ms. Jean was sentenced, this identical issue was raised by Mr. Durant-Solaire at his sentencing, and there the district court judge, based upon the same evidence that is in the record, concluded that Mr. Durant-Solaire should not have been held accountable for the checks that were presented by Ms. Farr, and held him accountable only for $109,000. Those are the checks that were presented by Ms. Jean and subsequently by Mr. Durant-Solaire. Is the problem here the district court viewed your client as a participant in the overall conspiracy rather than making fact findings with regard to her role? Is that the problem here? That's one of the problems, Your Honor. Because there was conflicting evidence, would you agree with me, about her role? There was conflicting evidence in the sense of—I'm not sure I follow Your Honor's question. Let's say on one hand there was evidence she described herself as a boss with independent access to checks and negotiated her own share of checks, but on the other hand there's some evidence she didn't really operate her own tax fraud company. I mean, there's just evidence about her being involved in some things, not in other things, and so the district court should have made some fact findings about her role. Yes, Your Honor. Is that really what needs to happen here? That's one of the things, Your Honor, but at the end of the day, there absolutely in this record is no evidence connecting Ms. Jean to Ms. Farr and Ms. Farr's activity. That goes to the loss amount. On the loss amount, yes. Okay, forget about the loss amount. I'm talking about role. Why wouldn't it be correct to say basically the district court didn't make any fact findings about role or didn't support, he just denied them, or she, I don't know who it was, denied her minor role, and it needs to have some fact findings about what her role was compared to other conspirators in order to have it. You're not saying as a matter of law she gets a minor role. Is that correct? What I'm saying is, Your Honor, that there was an inappropriate process that was employed. You're not saying as a matter of law she can't get it. You're just saying the way he went around or she did it was inappropriate here. Yes, Your Honor. At a minimum, the case needs to be remanded so that the court can apply the appropriate legal standard. Let's see if anybody else has any questions because you're over. Okay. Thank you, sir. For the government, please, Mr. Colon. Is that correct? Good morning. Jonathan Colon on behalf of the United States. Good morning. May it please the Court. I'm going to start with Mr. Prezendu's plea and then have some time to talk about Ms. John's sentencing issues. As to Mr. Prezendu, Your Honors, you have the transcript of the plea colloquy and the factual proffer, and I think it's very clear from this transcript that there is no showing. There's nowhere in the transcript where Mr. Prezendu shows any kind of confusion, lack of understanding. He repeatedly affirms his ability to communicate well with his attorney and understand his advice. They talk about having discussed the case in the plea. But how can you show a lack of understanding if someone doesn't tell you what's at issue? I think this is a very— I mean, there's no reason, no good reason why Mr. Prezendu wasn't told either by the AUSA or in the plea agreement or by the district judge the elements of the offense, right? There's no good reason for that. Well, Your Honor, I think I want to be very clear about what was told and what wasn't told. No, I know it was told. He was not told the elements of the offenses. He was not told that these detailed facts he admits constitute the elements of the offense. He wasn't even told what the elements were. He wasn't told that aggravated identity theft, for example, requires another charge, that it has to be the identity documents of a real person, so forth and so on. He wasn't told any of that. He wasn't told the elements of a bank fraud conspiracy at all either, right? You're right, Your Honor. He was not told that in order to be convicted of aggravated identity theft, you need to admit to facts A, B, and C. But as in Wiggins, he admitted specifically in great detail using all of the key words to A, B, and C. Right, but my—and I'm not saying this is reversible error, Mr. Cole. And what I'm saying is that you can admit to a state of facts, but unless you know that those facts constitute a crime, you might be out in left field. You may be in the dark. And I'm trying to figure out why in the world he wasn't told the elements of the offense. This is not like causing damage to government property where someone, you know, kicks something inside of a government office and causes damage. These are relatively sophisticated offenses. Well, Your Honor, the words that he does admit to are words like unlawful, unauthorized. I mean there is no confusion here that he knows he's admitting to facts that are crimes. He uses those words in his factual proffer. Counsel, I mean you're—as a U.S. attorney, presumably you're involved in a lot of these. Is there some practice of not telling the elements, or is in effect this is just a case where the judge either forgot or thought it was so clear that some part of the usual script didn't get said? Your Honor, forgive me, I'm really not familiar with the procedure used on a regular basis, and I don't want to speak beyond my knowledge. Okay, I just thought perhaps you were. Importantly, this is something we can pay closer attention to. One other question, which is, is there anything in the record, the complaints, the briefing, where defendant indicates that, oh, I wouldn't have pled guilty if I had known X or Y? Not at all, Your Honor. In fact, what he's asked specifically, are you pleading guilty to conspiracy to commit bank fraud and identity theft because you are in fact guilty? And he says yes. No, but I'm referring to the pleadings post-guilty plea, where they now raise these issues, which they didn't raise before the judge, but they say, and if we had known that, I wouldn't have pled guilty. I mean I'm raising Dominguez-Benitez, which seems to say that. His appellate brief, Your Honor, asks as a remedy either that he be allowed to withdraw his plea or get resentenced. I'm not sure how he gets to that, but he is asking to withdraw his plea. Okay. But I think it's very clear when he's, I mean he's actually. I know on appeal he is, but in the district court, this is a plain error of view. Yes. Did he make a motion to withdraw the plea in the district court? Not that I recall, Your Honor, and if he did, I apologize. If I had known all of this, I wouldn't have pled guilty. I don't believe so, Your Honor. We'll ask Ms. Hayes that when she gets up. Before we got up here on plain error of view, I assume that's why it's plain error of view, because he didn't go to the district court and say, I want to withdraw my plea. That's my understanding, Your Honor. And he also didn't say in the district court, through a declaration or his counsel saying it, that if I had known what the elements were, I would not have pled guilty. I do not recall any such statement or argument in the record. Okay. I think . . . Let me go back so you can . . . are you saying you're just an appellate lawyer? You don't take pleas? That's correct, Your Honor, and I apologize for not looking into that issue myself. You need to tell them to get a script, okay? I had a script. I was district court, and you just say you're charged with violation of United States Code section so and so. In order to prove you guilty, the government has to show A, B, C. I tell you what, my prosecutors would put it in the plea agreement. They'd set forth what you had to plead guilty to, what the elements of the offense are, and have a defendant sign. It is no reason we should be doing this today. Absolutely no reason. I'm just speaking for myself. I assure you, Your Honor, we've heard this. I would have it in the plea agreement. It would be in the plea agreement. I had a . . . to make sure, because you've got so much work, you need to convey this directly. To make sure you have so much work, I have a script. I almost know it by heart, but you can skip something, you can forget something. I made sure I did the script, and I made sure I had the elements of the offense. It's just no excuse for it. The judge might do it. The prosecutor should hand the judge, say, Please ask the defendant this, so I don't have to go to the Eleventh Circuit. It'll take five minutes, Judge. It's just no excuse for it. I assure you, Your Honor, we have heard this. Okay. It's just very frustrating. Yes, Your Honor. Unless there are further questions about Mr. Presidentew's plea, I think the record shows his careful attention to detail, including reserving the one fact he did not want to admit to, whereas the other facts in great detail show both his detailed knowledge of all of the facts that embody the elements of the offense, as in Wiggins, and his knowledge of their illegal nature, and therefore his plea and his conviction should be affirmed. Unless there's anything further on Mr. Presidentew, I'll turn to Ms. John's sentencing. Okay. On that regard, there seems to be an error in the loss amount, as he talks about, that there's no connection between her and Ms. Farr. Ms. Farr was at the end after she had completed, and there's no way she should be held responsible for that $84,000, but they've stipulated $109,000, so why shouldn't we remand on that? Okay. Your Honor, I want to address the court to the district judge's particular findings as to what Ms. John's jointly undertaken activity was in this case, and that's at page 14 and 15 of the sentencing transcript. And I think the fact that Ms. Farr's involvement changed over time and how the district judge treated that is instructive as to the attention the judge made as to what Ms. John's responsibility should be. As we all agree, Ms. Farr was involved earlier on in the conspiracy before Ms. John joined because Mr. Presidentew, who introduced Ms. John herself into the conspiracy, Mr. Presidentew had previously been working with Ms. Farr's tax services. Ms. John was not held responsible for that, for those tax services, for Ms. Farr's actions, or even Mr. Presidentew's before. Ms. John is held responsible for her jointly undertaken activity once she joins the conspiracy, and what her jointly undertaken activity with Mr. Habib was was to procure fraudulent checks obtained through fraudulent tax preparation services and to keep the conspiracy going by introducing new members into Mr. Habib's operation. That is the finding that the district court made, and this is on page 14 and 15 of the transcript, and it's in the district court's application of those facts to the guidelines. As counsel says, the district court sat through the trial of Mr. Duran-Soler. The district court was very familiar with the ins and outs of this conspiracy. Those findings are entitled to some deference here. He understood, the trial judge saw that Ms. John's role wasn't as— He took facts from the trial and applied them here? He doesn't cite particular facts from the trial, but he notes, having sat through the trial of Mr. Duran-Soler, I'm familiar with this conspiracy. Words to that effect. But you can't do that. I'm sorry, Your Honor? You cannot do that. He doesn't apply a particular fact to Ms. Duran-Soler. You cannot use fact-finding from another proceeding for a defendant who hasn't had the opportunity to be present and challenge those facts. I think perhaps I'm using imprecise language, Your Honor, and let me try to correct what I'm suggesting. You can look at the transcript yourself, and you'll see what the judge says. But what the judge is saying is, I understand this conspiracy, having been the one who's been hearing the cases of all the co-conspirators. And what the judge finds is that Ms. Jeanne's activity— he makes findings about her, her particular undertaken activity, and says her activity was to introduce new members into this conspiracy. This was not a street-level drug mule. That would be a different case if we were trying to say that every street-level drug mule is responsible for every other. That's not this case. Ms. Jeanne worked directly with Mr. Habib to expand the conspiracy. This is like the case in— But how is she introducing new members as Ms. Farr? Because Farr was already involved previously. How would that be a new member of the conspiracy? She wasn't a new member. Again, I want to make sure I'm being precise. Ms. Jeanne did not introduce Ms. Farr. Ms. Jeanne brings in her own relative who is involved in bringing checks. She brings in Mr. Duran-Soler who continues the conspiracy. By continuing the conspiracy and working directly with Mr. Habib to do so— So you're saying if Habib's dealing with Farr, she's still responsible for that, even though she's not involved? Because her jointly undertaken activity is with Mr. Habib to expand the operation. Help me with this, though. I thought she had withdrawn and stopped at a certain point before Mr. Habib got Ms. Jeanne back in. Again, I want to use precise language. Ms. Jeanne herself disclaims any formal withdrawal. We're not talking about a withdrawal from conspiracy. We are saying that Mr. Habib says to Jeanne, I don't want to work directly with you. So Ms. Jeanne says, OK, I can bring in Mr. Duran-Soler who will work with you sort of on my behalf. At a certain point, Jeanne and Duran-Soler's relationship deteriorates. But Ms. Jeanne very specifically has an undertaking with Mr. Habib, OK, you won't talk to me anymore, but you're going to talk to Duran-Soler, and this is going to keep things going. But how does Farr get involved in all of that? Later on, Duran-Soler, I'm sorry. Later on, Farr comes back to Habib, and I believe Independently of Jeanne? Yes, Farr and Jeanne do not deal with each other. So how is that jointly undertaking criminal activity? Because what has to be jointly undertaking, it doesn't have to be each individual person has to make a specific individual agreement. Jeanne's undertaken activity is with Habib. It is to continue Habib's operation. She's dealing with the case in Petrie and in White, a case that the defense attempts to distinguish on page 6. So everybody that Habib dealt with after that point in time is attributable to Jeanne? As long as it's within the scope of Jeanne's undertaking with Habib and reasonably foreseeable to continue their operation. What's the undertaking? To procure fraudulent checks obtained by tax preparation services. With no limitation? Yeah. I mean, I suppose there could be some case... Habib could have reached out to another state and gotten other people there to do that, and Jeanne would have been responsible for them too? There could certainly be facts. Another state, 10 years hence, where it would be so far removed. But that's not this case. Jeanne, this is the same store. This is the same operation. This is checks obtained by fraudulent tax preparation. That is what Jeanne undertook with Habib and kept it going. And it is reasonably foreseeable to Jeanne that when she helps keep Habib's operation going, that he has other people working for him too. This is not a case where she's just some street-level mule who's not dealing with the boss or helping the operation go. This is someone working directly with the boss. The case in Jeanne's reply brief at page 6, she attempts to distinguish the case of White by saying, well, in that case, the person was dealing directly with the tax filer. Well, that's this case. In this case, Jeanne is working directly with the check casher and therefore is responsible for other people's checks, just as in White the defendant was held responsible for other tax filers, even the ones... other tax preparers, even the ones... I'm sorry, check cashers, even beyond herself. And even who she did not have any direct dealings with. It is not required that Jeanne have direct dealings with Farr. What's required is that Jeanne had jointly undertaken activity with Habib. Help me with this. Where did Farr operate out of physically? Are they all out of the same office or are they in different physical locations? I'm not aware of Farr's location, but Habib's location is the same. Habib runs a store and people come to him with their checks. Okay, and does Farr come to that store or is Farr off somewhere else doing it? My understanding is that Farr came to Habib at Habib's location, the same location. I thought Farr had a separate tax preparer. Farr generates checks from a separate location, just like Jeanne generated checks from a separate location. That's what I was trying to get at. Habib is the lead person. Okay, but Farr and Jeanne are at different locations... Yes. ...generating the bad checks. Who then bring them to Habib, the central. So anybody who came to Habib at that period of time, Jeanne is responsible for? So if there was somebody that Habib and Jeanne didn't even know about but they walk into Habib's store and say, I got some fraudulent checks to cash, and they get cash, she's responsible for them? I believe it could be, Your Honor. I believe there could be cases so far removed, but Farr is not so far removed. Farr was someone who worked with Prez and Dew, who brought Jeanne into the conspiracy. Farr was there before Farr came out. Is there any indication that Jeanne and Farr even know each other or know of each other? Nothing that I saw on the record, Your Honor. As to the minor role, I will just brief up. I can have a few seconds to briefly cite you to pages 27 of the transcript, where I believe there were findings as to Jeanne's particular role not being held for the conspiracy in general, but her own actions the district court makes findings of on page 27. Unless the court has any further questions, we ask the court to affirm both Mr. Prez and Dew's conviction and Ms. Jeanne's sentence. Thank you. Thank you. Ms. Hayes? Thank you. Did your client file a motion withdrawing the district court? No, Your Honor. Has your client filed any declaration, anything saying, if you had told me these elements, I would not have pled guilty? No, Your Honor. But for the purpose of his due process challenge, he was not required to do that. I'm not saying he is. I'm just trying to get record. Yes, Your Honor. Of course. And your statement there relies on what in Dominguez Benitez, that it only talks about Rule 11? Exactly, Your Honor. In fact, it specifically says that it's important to note that that case did not present a due process claim. It specifically says that, and it limits its application to Rule 11. And back in Henderson v. Morgan Supreme Court case, the court said that any assumption that the defendant would have entered a guilty plea is not important to the constitutional analysis of plain error. I want to tell the court that it's not extraordinary in this district. It is not extraordinary for the district court not to explain the elements of the offense to the defendant. I read a lot. I don't do the trial work myself. I read a lot of plea transcripts. And this omission is very common. I also want to note that. What do you attribute it? Just rush to take a plea? I'll tell you what I attribute it. Rush to take a plea? I attribute it as an unexpected consequence of plain error review and the requirement for Rule 11 errors that everything will be confirmed anyway. And so there's no course correction here. And it goes across different judges. There's no course correction. Nobody comes back to court, never comes back and says, this is mandatory. You need to do this. It's been a long time since that message has been given in terms of an Eleventh Circuit opinion. Now we've reached the magnitude in this course of a constitutional due process error because there simply is no record that this gentleman has ever been given this advice. And it's time for this court to give the message now, both in the constitutional context and Rule 11. If you have no further questions, I'll ask you to reverse Mr. Presidio's conviction. Thank you. Thank you, Ms. Hayes. Mr. Bergendahl, you have two. Focusing first on the incorrect calculation of the loss amount, the government repeatedly makes reference to Ms. Jean having an agreement with Habib. But at the time that Ms. Jean was dealing with Habib, from a pure conspiracy law standpoint, she could have no agreement with him because at all times when Ms. Jean became involved, he was already a government agent and acting under the auspices and the direction of the case agents. Number two, what the record really shows is that Ms. Jean, the scope of her jointly undertaken activity was that she was going to go in and cash some checks for Mr. Presidio and for Mr. Durant-Solaire, because as the record developed, Durant-Solaire made an admission that the checks that Ms. Jean had brought to the quick stop, some of them belonged to Presidio, some of them belonged to Durant-Solaire. By February of 2014, after Mr. Durant-Solaire becomes directly involved, he becomes suspicious of Mr. Habib, doesn't want anything further to do with him. And at that point in time, everything insofar as Ms. Jean is considered is functionally, factually and legally over. It's not until four months later, June of 2014, when Ms. Farr reestablishes contact. And at that point in time, she makes it clear. I'm here on my own. This has nothing to do with Presidio. I don't want anything to do with him anymore. I have no relationship. I want to start fresh with you, Mr. Habib, and I want to go forward from this point. Counsel, if we agree with you on the first point as to the loss amount, which then in effect limits the activity to the interaction between Jean and Habib, is there any way she could be a minor participant in that? I mean, doesn't that undercut any notion that she is now a minor participant in that limited activity? No, Your Honor, I don't think it does. Because in order to properly analyze whether or not an individual is a minor participant, I think the court has to go ahead and take a look at Amendment 794, which was not in effect at the time that Ms. Jean was sentenced. But because it's a clarifying amendment, it is in effect now. And I think it makes clear that in order to go ahead and determine whether or not a person is entitled to a minor role, you have to go ahead and look at their conduct within the jointly undertaken criminal activity and compare it with everyone else. That's good enough for me. Unless there are . . . Yeah, it's just not . . . It's like the drug, even though they had the drugs, you don't just equate it to the drug amount they held responsible for, is what you're saying. Correct. You still got to do this separate analysis. It may end up in the same place, but you still have to do it. Yes, and the district court made a rather poignant comment. I think we have it, and your time has expired. I'm sorry. I gave everybody overtime, so we need to go to the last case. And thank you, Mr. Berger.